IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| MAYO CLINIC JACKSONVILLE,<br>MAYO FOUNDATION FOR MEDICAL<br>EDUCATION AND RESEARCH,<br>MYRIAD GENETICS, INC., and<br>MYRIAD PHARMACEUTICALS, INC.,<br><br>        Plaintiffs/Counter-Defendants,<br><br>v.<br><br>ALZHEIMER'S INSTITUTE OF AMERICA,<br>INC.,<br><br>        Defendant/Counter-Plaintiff. | Case No.:    8:05-cv-00639-SDM-TBM<br>                  8:05-cv-01049-SDM-TBM<br><br>DISPOSITIVE MOTION |

**PLAINTIFFS' MOTION TO DISMISS COUNTS III & IV OF DEFENDANT'S
COUNTERCLAIMS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF
<u>CAN BE GRANTED</u>**

Plaintiffs Mayo Clinic Jacksonville, Mayo Foundation for Medical Education and Research ("Mayo Foundation") (together, "Mayo"), Myriad Genetics, Inc., and Myriad Pharmaceuticals, Inc. (together, "Myriad") (collectively, "Plaintiffs") hereby move to dismiss Counts III and IV of defendant and counter-claim plaintiff Alzheimer's Institute of America, Inc.'s ("AIA") Amended Counterclaims for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Counts III and IV of AIA's Amended Counterclaims, which purport to assert state law claims for an equitable interest in Mayo's patent rights and unjust enrichment, fail to state a claim because they are preempted by federal patent law. In support of the relief requested herein, Plaintiffs offer the following memorandum of law.

1

**Introduction**

The Mayo plaintiffs are both part of the Mayo Clinic, a non-profit and world-renowned research and treatment facility that is engaged in finding treatments and cures for a variety of diseases, including Alzheimer's disease.[1] While both Mayo plaintiffs are involved in Alzheimer's disease research, Mayo Clinic Jacksonville employs several of the world's top Alzheimer's disease scientists, who have devoted their careers to understanding the disease and working towards an eventual cure.

As part of their research efforts, scientists at Mayo Clinic Jacksonville collaborated with the Myriad plaintiffs in the development of the Alzheimer's drug candidate, Flurizan, over the last several years. The Myriad plaintiffs invested over two-hundred-million dollars in this joint effort, providing the crucial financial support that is necessary to the development of any drug.

Unfortunately, in June of last year, Flurizan failed, and this once-promising treatment is no more. Nonetheless, AIA seeks massive "damages" from Mayo and Myriad in this suit simply because Myriad was able to recoup a portion of the money it lost on Flurizan from a potential European partner, H. Lundbeck. According to AIA, Mayo and Myriad's alleged patent infringement entitles it to millions of dollars, despite Myriad never having made a dime on the drug.

For its part, AIA, while it calls itself the Alzheimer's Institute of America, provides nothing of value to the public. It does no research, neither makes nor sells any products, and

---

[1] Plaintiffs' Introduction section is intended only to offer background, and Plaintiffs understand that the Court will decide this motion based entirely on the facts alleged in the pleadings.

publicly represents itself as an entity engaged in the business of licensing patents, not one that makes any financial investments into researching Alzheimer's disease or finding potential treatments. Even its name is a fiction, as it is not an "Institute" at all. Rather, AIA's activities are limited to attempting to make money licensing patents it purchased from someone else.

This motion concerns two of the causes of action through which AIA seeks this unjustified windfall, its so-called "unjust enrichment" and "equitable interest" claims. As demonstrated below, the Court should dismiss these claims, as preempted by federal patent law.

## Memorandum of Law

Federal patent law provides the sole remedies for patent infringement. By federal statute, remedies for patent infringement are limited to money damages and injunctive relief. Despite clear statutory principles and the guidance of case law, AIA tries to devise new remedies for patent infringement premised on state law claims. This attempt to double-dip by seeking to recover for patent infringement under both federal patent law and state law claims is not permitted. AIA's state law counterclaims are preempted by federal patent law. Because Counts III and IV of AIA's Counterclaims fail to state a cognizable claim for relief, the Court should dismiss them, leaving AIA's patent infringement counterclaim as the sole avenue for AIA to recover for patent infringement. This memorandum of law sets forth the case law and principles demonstrating that AIA's state law counterclaims for an equitable interest in Mayo's patent rights and unjust enrichment arising from Plaintiffs' alleged infringement are preempted by federal patent law.

## BACKGROUND

I. <u>**Procedural History**</u>

On December 18, 2003, AIA filed suit against Plaintiffs for patent infringement in the United States District Court for the District of Kansas (the "Kansas action"). The dispute primarily concerned whether Plaintiffs' activities fell within the scope of a patent license agreement between Mayo Foundation and AIA, which granted Mayo Foundation certain rights in U.S. Patent No. 5,455,169 and related applications owned by AIA. On March 11, 2005, Plaintiffs filed an action against AIA in Florida state court (the "Florida action") seeking to compel arbitration of the parties' dispute in the Kansas action. On March 31, 2005, Plaintiffs filed an amended complaint under seal asserting that an arbitration clause of the patent license agreement between Mayo Foundation and AIA required arbitration of the parties' dispute. When AIA filed its answer, affirmative defenses, and counterclaims on March 31, 2005, AIA also filed a notice of removal of the Florida action to this Court. (Docs. 1-3.) On June 1, 2005, AIA transferred the Kansas action to this Court, which the Court accepted on June 6, 2005. On June 27, 2005, Plaintiffs filed an unopposed motion to consolidate the Kansas action with the Florida action. (Doc. 20.)

On July 28, 2005, Plaintiffs filed an amended complaint seeking to compel arbitration under the Federal Arbitration Act. (Doc. 25.) On September 2, 2005, AIA filed its amended answer and counterclaims, which asserted claims for patent infringement and breach of the license agreement. (Doc. 33.) On October 13, 2005, this Court ordered arbitration pursuant to a provision in the parties' license agreement, consolidated the Kansas and Florida actions, and stayed the litigation pending arbitration. (Doc. 40.)

The arbitration concerned the scope of the patent license agreement between Mayo Foundation and AIA, specifically whether the use of the patented technology in cell lines fell within the scope of the agreement. (Doc. 40.) The arbitrator issued an award on January 28, 2008, which was filed with this Court on January 9, 2009. (Doc. 60.) Prior to the filing of the award, on November 14, 2008, AIA moved to reopen this case, lift the stay, and schedule a case management conference. (Doc. 41.)

## II. AIA's Counterclaims

The only remaining dispute between the parties is an allegation of patent infringement. On January 30, 2009, AIA filed a motion for leave to file an amended answer and counterclaims, adding counterclaims for an equitable interest in "Mayo patent rights" and unjust enrichment in addition to the original counterclaims for patent infringement and breach of the license agreement. (Doc. 71-2.) Although Plaintiffs agreed that AIA had the right to amend as a matter of course, Plaintiffs pointed out that the two counterclaims AIA sought to add fail to state cognizable claims. (Doc. 78.) Plaintiffs noted that they would file this motion once AIA served its Amended Counterclaims. (*Id.*) The Court granted AIA's motion to amend on February 18, 2009. (Doc. 80.)

In Count I of its Amended Counterclaims, AIA alleges that Plaintiffs infringed two patents owned by AIA: U.S. Patent Nos. 5,455,169 and 5,795,963 (collectively, "AIA's patents"). As relief for patent infringement, AIA seeks an injunction; damages adequate to compensate for infringement, trebled for willfulness; costs, reasonable attorneys fees, and expenses; and other relief the Court deems just and proper. (Doc. 71-2, at 13–14.) AIA's request for relief for patent infringement, however, does not end with Count I. AIA also

5

asserts two state law counterclaims against Plaintiffs which, while solely premised on allegations of patent infringement, seek additional remedies not allowed by the patent statute. (Doc. 71-2, at 12–13.)

In Count III, AIA seeks an equitable interest in certain patents invented by a Mayo researcher (working in conjunction with a scientist at the University of California). AIA alleges that Mayo wrongfully procured these patents "by mistaken or willful infringement" of AIA's patents. (Doc. 71-2, at 12.) As relief, AIA asks this Court to enter judgment that AIA owns an equitable interest in Mayo's patent rights and to create a constructive trust or equitable lien in favor of AIA over revenue streams flowing from those rights. (Doc. 71-2, at 14.) AIA's allegations are summarized as follows:

- Mayo researcher Dr. Todd Golde used cell lines covered by AIA's patents as part of his ongoing research relating to Alzheimer's disease.
- As a result of his research, Dr. Golde and Mayo were awarded the U.S. Patent No. 6,911,466 patent ("the '466 patent").[2] Some of the underlying data described in the patent was generated using the allegedly infringing cell lines.
- As a remedy for Dr. Golde's alleged infringement of AIA's patents, AIA is entitled to an ownership interest in his '466 patent and all related patents.

Through this Count, AIA tries to pass off a state law equitable remedy that traditionally serves to prevent unjust enrichment as a remedy for patent infringement.

In Count IV, AIA alleges that Plaintiffs were unjustly enriched by their alleged infringing use of AIA's patented inventions. (Doc. 71-2, at 13.) The only "benefit" AIA

---

[2] The claims of the '466 patent pertain to pharmaceutical compounds that may be used to treat individuals with Alzheimer's disease, and thus have nothing to do with the claims of AIA's patents. Moreover, practicing the claims of the '466 patent does not result in any infringement of AIA's patents.

6

identifies that it conferred upon Plaintiffs is Plaintiffs' own allegedly infringing use of AIA's patents. (Doc. 71-2, at 13.) As relief, AIA seeks an award equal to the amount by which Plaintiffs were allegedly unjustly enriched by virtue of their infringement of AIA's patents. (Doc. 71-2, at 14.) AIA asserts an unjust enrichment claim based solely on alleged infringement in an effort to expand the remedies available to it for patent infringement.

In an effort to obtain relief beyond what the patent laws permit, AIA sets forth nonsensical counterclaims that this Court should dismiss because they are preempted.

## ARGUMENT

In considering a motion to dismiss for failure to state a claim upon which relief can be granted, the factual allegations of a counterclaim are accepted as true and construed in the light most favorable to the counter-plaintiff. *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2007), *reh'g en banc denied*, 261 F. App'x 280 (11th Cir. 2008). To satisfy the counter-plaintiff's obligation to provide the grounds of his entitlement to relief, the factual allegations of the counterclaim "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (U.S. 2007). "Regardless of the alleged facts, a court may dismiss a complaint on a dispositive issue of law." *Morris v. ADT Sec. Srvs.*, 580 F. Supp. 2d 1305, 1308 (S.D. Fla. 2008).

### I. AIA Cannot Seek a State Law Remedy For Conduct Regulated Under Federal Patent Law

"Under the Supremacy Clause, 'it has been settled that state law that conflicts with federal law is without effect.'" *Hunter Douglas, Inc. v. Harmonic Design*, 153 F.3d 1318, 1331 (Fed. Cir. 1998), *overruled on other grounds by Midwest Indus., Inc. v. Karavan Trailers*, Inc., 175 F.3d 1356 (Fed. Cir. 1999). A state law is preempted when it "'stands as

an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* at 1332 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). State law causes of action that purport to provide a separate remedy for the same wrong are preempted. *See Dow Chem. Co. v. Exxon Corp.*, 139 F.3d 1470, 1476–78 (Fed. Cir. 1998); *Abbott Labs. v. Brennan*, 952 F.2d 1346, 1355–57 (Fed. Cir. 1991).

To determine if conflict preemption exists, Courts look to the <u>conduct</u> underlying the putative state law claim. *Hunter Douglas*, 153 F.3d at 1335; *accord Mass. Eye and Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 234 (Fed. Cir. 2005). The *Hunter Douglas* court explained:

> To determine whether these state law torts are in conflict with federal patent law and accordingly preempted, we assess a defendant's allegedly tortious <u>conduct</u>. If a plaintiff bases its tort action on <u>conduct</u> that is protected or governed by federal patent law, then the plaintiff may not invoke the state law <u>remedy</u>, which must be preempted for conflict with federal patent law.

*Hunter Douglas*, 153 F.3d at 1335 (emphasis added).

There is no question that Counts III and IV of AIA's Amended Counterclaims are based solely on Plaintiffs' alleged infringement of AIA's patents. AIA states in Count III that "AIA owns an equitable interest in Mayo patent rights and technical data controlled by Myriad" because Plaintiffs "wrongfully procured the patent rights and technical data <u>by</u>

8

mistaken or willful infringement of AIA's '169 and '953 Patents . . . ."³ (Doc. 71-2, at 12, ¶ 24 (emphasis added).) Count III also avers that AIA's constructive trust and equitable lien theories arise "Pursuant to the law of the States of Florida, Utah, and other States where infringement may have occurred . . . ." (Doc. 71-2, at 12, ¶ 26 (emphasis added).) Finally, AIA's answer to the Court's mandatory interrogatories confirms that the conduct underlying Count III is patent infringement:

> [A]s a result of Counter-Defendants' infringement, AIA plans to seek a ruling from the Court establishing a Constructive Trust for the benefit of AIA's equitable interest in the '466 patent and its foreign counterparts, together with all revenue and other property flowing from such patent issues.

(Doc. 69, at 3–4 (emphasis added).)

AIA's unjust enrichment "claim" in Count IV is similarly predicated on patent infringement. AIA alleges that Mayo and Myriad have been unjustly enriched "[a]s a direct and proximate result of Mayo and Myriad's unauthorized use of AIA's Swedish mutation cell lines . . . ." (Doc. 71-2, at 13, ¶¶ 28–29 (emphasis added).) Lest there by any doubt, AIA makes clear in its answer to the mandatory interrogatories that Count IV is based on alleged patent infringement:

> Under a theory of unjust enrichment, AIA also plans to seek recovery for revenues received by Counter-Defendants related to the unauthorized and therefore infringing use of Swedish mutation cell lines covered by AIA's patents.

(Doc. 69, at 3 (emphasis added).)

---

³ AIA adds "and/or breach of the License Agreement" to that allegation, but legally this adds nothing because all of AIA's breach claims have now been dismissed as a result of the Arbitration. (Doc. 63.) AIA's breach claims are barred as a result of *res judicata*. To the extent AIA somehow still tries to argue that Counts III and IV are supported by a breach of License Agreement theory, those claims would have to be sent back to arbitration under the terms of the License Agreement.

AIA fails to allege any type of conduct not governed by federal patent law. Such conduct <u>must</u> be alleged to avoid preemption of these state law remedies. *See Hunter Douglas*, 153 F.3d at 1335. Without any grounding in conduct amenable to state regulation, AIA's claims fail. *Veto Pro Pac, LLC v. Custom Leathercraft Mfg. Co.*, No. 3:08-cv-00302, 2009 WL 276369, at *2 (D. Conn. Feb. 5, 2009); *Knova Software, Inc. v. Inquira, Inc.*, No. 06-381-JJF, 2007 WL 1232186, at *2–3 (D. Del. Apr. 27, 2007).[4] AIA cannot be compensated twice for the same alleged conduct—patent infringement. *Dow Chem. Co.*, 139 F.3d at 1477–78.

Courts have concluded that state law claims premised solely on patent infringement are preempted:

> Accordingly, the Court concludes that the third count of the complaint, unjust enrichment, is completely preempted as it simply incorporates the two counts of patent infringement by reference and asserts that these also constitute unjust enrichment on the part of the defendants.

*Veto Pro Pac, LLC*, 2009 WL 276369, at *2. Because AIA fails to identify any conduct aside from the alleged patent infringement to support its state law claims, the Court should dismiss Counts III and IV of AIA's Amended Counterclaims as preempted by federal patent law.

---

[4] For example, AIA does not (and cannot) claim to be a joint inventor of Mayo's patents, nor does AIA allege that Mayo copied AIA's confidential information and patented it without AIA's knowledge or consent. *See, e.g.*, *Univ. of Colo. Found., Inc. v. Am. Cyanamid Co.*, 342 F.3d 1298, 1306–07 (Fed. Cir. 2003).

## II. Damages Pursuant to Federal Patent Law Are the Exclusive Remedy For Patent Infringement

Federal patent law provides the exclusive remedy for patent infringement. The Patent Act provides that upon a finding of infringement, the claimant will be awarded "damages adequate to compensate for the infringement but in no event less than a reasonable royalty" for the defendant's infringing use of the invention. 35 U.S.C. § 284.

AIA's Counts III and IV seek as a remedy return by Mayo and Myriad of property (patent rights) and money allegedly garnered through the subsequent (years later) license of intellectual property (the Mayo patent) resulting from Mayo's own research, which, in part, purportedly utilized cell lines covered by AIA's patents. Prior to the Patent Act of 1946, a patent owner could indeed seek to recoup profits made by an infringer as a result of the infringement. *Aro Mfg. v. Convertible Top Replacement Co.*, 377 U.S. 476, 505 (1964). But, the 1946 amendment <u>eliminated</u> recovery of an infringer's profits as a remedy for patent infringement. *Id.* The Supreme Court held in *Aro*:

> The purpose of the change was precisely to eliminate the recovery of profits as such and allow recovery of damages only. "The object of the bill is to make the basis of recovery in patent-infringement suits general damages, that is, any damages the complainant can prove, not less than a reasonable royalty, together with interest from the time the infringement occurred, rather than profits and damages." <u>There can be no doubt that the amendment succeeded in effectuating this purpose; it is clear that under the present statute *only damages are recoverable*</u>.

*Id*. at 505–06 (citation and footnote omitted) (emphasis added).

The Supreme Court went on to explain that amounts received by an infringer are entirely irrelevant to the patent owner's actual damages:

> But the present statutory rule is that <u>only "damages" may be recovered</u>. These have been defined by this Court as "compensation for the pecuniary loss he (the patentee) has

>suffered from the infringement, <u>without regard to the question whether the defendant has gained or lost by his unlawful acts</u>." They have been said to constitute "the difference between his pecuniary condition after the infringement, and what his condition would have been if the infringement had not occurred."

*Id.* at 507 (citation omitted) (emphasis added).

The plain language of the patent statute authorizes a patentee to recover money damages from an infringer. 35 U.S.C. § 284. Damages take the form of the patent owner's lost profits, or reasonable royalties. *Rite Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995). Further, the only equitable remedy available for patent infringement is an injunction. 35 U.S.C. § 283.

In Counts III and IV, AIA asks this Court to go where no court has yet gone. AIA seeks to expand the damages federal patent law provides for infringement by seeking purely state law remedies. The law does not allow AIA to take two bites at the apple. *See Dow Chem. Co.*, 139 F.3d at 1476–78. Awarding remedies pursuant to Counts III and IV would impermissibly create remedies for infringement not provided by the Patent Act. As a matter of preemption, there is no room in the federal scheme for state law remedies for patent infringement. U.S. Const. art. I, § 8, cl. 8.[5]

Indeed, it is not a coincidence that no court has ever imposed an equitable lien on property as a remedy for patent infringement. If an equitable ownership interest in the fruits

---

[5] Count III is really a remedy, not a cause of action. *See, e.g.*, *Collinson v. Miller*, 903 So. 2d 221, 228 (Fla. 2d DCA 2005); *Lakeside Lumber Prods., Inc. v. Evans*, 110 P.3d 154, 157 (Utah Ct. App. 2005). Most often, constructive trusts are a remedy for unjust enrichment. *See, e.g.*, *Abele v. Sawyer*, 747 So. 2d 415, 416 (Fla. 4th DCA 1999); *Wilcox v. Anchor Wate Co.*, 164 P.3d 353, 362 (Utah 2007).

of infringement were a cognizable remedy under the Patent Act, every patent owner would seek ownership as a remedy for patent infringement in virtually every case. If an accused infringer used an allegedly patented machine to build products, the patent owner would always claim it had an equitable ownership interest in those products. Plaintiffs could not find a single case that provides for such a remedy. This is not surprising given the explicit mandate in the Patent Act that money damages and injunctions are the available remedies for patent infringement. *See* 35 U.S.C. §§ 283, 284.

Despite clear commands from Congress and the Supreme Court defining the remedies for patent infringement, AIA attempts to recover (i) Mayo and Myriad's "profits"; (ii) an equitable interest in patents owned by Mayo; and (iii) an equitable interest in technical data owned by Mayo and Myriad.[6] (Doc. 71-2, at 12–14.) AIA asks for more than the Patent Act gives. AIA ignores that in a patent damages analysis, the focus is on harm done to a patentee by the infringement, not the benefits received by infringers due to their infringement. *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 654–55 (1983).

Knowing that a proper patent damages award will not amount to millions of dollars, AIA desperately asserts these state law remedies in an attempt to "swing for the fence" in what will otherwise be an unremarkable damages case. Adequate compensation under the Patent Act would include recovery of AIA's lost profits due to Plaintiffs' infringement or a reasonable royalty for Plaintiffs' infringing use of AIA's patented technology. *See, e.g.*, *Rite*

---

[6] Mayo and Myriad use the term "profits" in its broadest sense – gross revenue. While Myriad did receive $100 million in milestone license revenue, its drug candidate ultimately failed. Myriad spent well over $200 million attempting to develop the drug, and by no means made any profit whatsoever.

13

*Hite*, 56 F.3d at 1554.  Since AIA produces nothing and sells nothing, only a reasonable royalty is available to it in this case.  AIA's attempt to achieve an aberrant result is simply unavailing.

## CONCLUSION

For the reasons set forth above, Plaintiffs request that the Court enter an order dismissing Counts III and IV of AIA's Amended Counterclaims with prejudice.

Respectfully submitted,

Dated: March 5, 2009

By: /s/ Sara Cotton
Michael E. Florey (*pro hac vice*)
Jonathan E. Singer (*pro hac vice*)
Thomas S. McClenahan (*pro hac vice*)
Sara Cotton (*pro hac vice*)
FISH & RICHARDSON P.C.
3200 RBC Plaza
60 South 6th Street
Minneapolis, MN 55402
Telephone: (612) 335-5070
Facsimile: (612) 288-9696
florey@fr.com
singer@fr.com
mcclenahan@fr.com
cotton@fr.com

Michael L. Chapman
Florida Bar No. 843555
HOLLAND & KNIGHT LLP
100 North Tampa Street, Suite 4100
Tampa, FL 33602-3644
Telephone: (813) 227-8500
Facsimile: (813) 229-0134
michael.chapman@hklaw.com

*Attorneys for Plaintiffs/Counter-Defendants*
*MAYO CLINIC JACKSONVILLE,*
*MAYO FOUNDATION FOR MEDICAL*
*EDUCATION AND RESEARCH,*
*MYRIAD GENETICS, INC., and*
*MYRIAD PHARMACEUTICALS, INC.*

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on March 5, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants.

                                        /s/ Sara Cotton
                                        Sara Cotton

60560119.doc