**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | | |
|---|---|---|
| MAYO CLINIC JACKSONVILLE,<br>MAYO FOUNDATION FOR MEDICAL<br>EDUCATION AND RESEARCH,<br>MYRIAD GENETICS, INC. and<br>MYRIAD PHARMACEUTICALS, INC., | ) <br>) <br>) <br>) <br>) <br>) | |
| | ) | Case No. 8:05-cv-639-T23-TBM |
| Plaintiffs, | ) | 8:05-cv-1049-T23-TBM |
| | ) | |
| vs. | ) | |
| | ) | |
| ALZHEIMER'S INSTITUTE OF AMERICA, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES,**
**AND COUNTERCLAIMS TO PLAINTIFFS' AMENDED COMPLAINT**

Defendant Alzheimer's Institute of America, Inc. (AIA) files its Second Amended

Answer, Affirmative Defenses, and Counterclaims to Plaintiffs' Amended Complaint

(Doc. 25, filed July 28, 2005), and states as follows:

AIA denies each allegation that is not expressly admitted below.

1.      AIA admits that this is an action to compel arbitration and that Plaintiffs

are requesting to stay a patent infringement action that has been brought by AIA.  The

patent infringement action is also with this Court and is designated as Case No. 8:05-cv-

1049-23TBM.  AIA is Plaintiff in that other action, which is now consolidated with the

present action (Doc. No. 21 in Case No. 8:05-cv-1049-23TBM).  AIA denies all other

allegations of this paragraph of the Amended Complaint.  Although there is a License

Agreement between AIA and the Mayo Foundation For Medical Education and Research

(Mayo FMER) as identified by Plaintiffs, this License Agreement does not govern the actions that AIA has complained of in its patent infringement action.

2.      AIA admits that this Court has subject matter jurisdiction.

3.      AIA admits that Plaintiff, Mayo Clinic Jacksonville, is a Florida nonprofit corporation having its principal place of business at 4500 San Pablo Road, Jacksonville, Florida 32224.

4.      AIA admits that Plaintiff, Mayo FMER, is a Minnesota nonprofit corporation having its principal place of business at 200 SW First Street, Rochester, Minnesota 55905.  Plaintiffs Mayo Clinic Jacksonville and Mayo FMER may collectively be referred to herein as "Mayo."

5.      AIA admits that Plaintiffs, Myriad Genetics, Inc. and Myriad Pharmaceuticals, Inc. (collectively "Myriad"), are both Delaware corporations having their principal place of business at 320 Wakara Way, Salt Lake City, Utah 84108.

6.      AIA admits that it is a Florida corporation having its principal place of business at 1300 North 78th Street, Kansas City, Kansas 66112.

7.      AIA admits that this Court has personal jurisdiction over AIA.  AIA denies all other allegations in this paragraph and has not agreed to submit the patent infringement action to arbitration.

8.      AIA admits that it and Plaintiff Mayo FMER entered into a License Agreement on September 13, 1996 ("License Agreement").  AIA denies the characterization that the Field of Use is "broadly defined," but otherwise admits that the agreement contains the language as shown in Plaintiff's Exhibit A.  AIA denies all other allegations of this paragraph.

9.       AIA denies that the License Agreement contains an "arbitration clause" to the extent that the allegations presume this clause governs AIA's conduct in context of the patent infringement action.  AIA admits the remaining allegations of this paragraph, specifically noting the language "excluding any dispute relating to patent validity or infringement."

10.      Denied.  The License Agreement speaks for itself.

11.      AIA admits that the License Agreement is valid, has not been revoked and is enforceable.  AIA denies that the arbitration provision applies to the patent infringement action.  The arbitration provision does not govern the patent infringement action, and does not operate to compel arbitration as Plaintiffs allege.

12.      The allegations of this paragraph generally conform to AIA's understanding of the facts that underlie AIA's action for patent infringement action.  As to specific allegations concerning the timing and nature of the collaboration between Plaintiffs Mayo Clinic of Jacksonville and Mayo FMER (collectively "Mayo") and Myriad, and the transfer of the cell line containing the Swedish Mutation, AIA has insufficient information to form a reasonable belief and, consequently, denies the allegations.

13.      Denied.

14.      Admitted.

15.      Denied.

16.      AIA admits that Plaintiffs requested arbitration of the patent infringement action, and that AIA declined to do so on the basis that arbitration was inappropriate under the terms and conditions of the License Agreement, that the parties have stipulated

to extensions of time or tolling of a deadline for filing a demand for mediation or

arbitration, and that Plaintiffs raised an issue of compelling arbitration in their Amended

Answer in Kansas Action.  AIA denies all other allegations of this paragraph, and

particularly the allegations that Plaintiffs have a right to compel arbitration and no waiver

has occurred.

      17.     Admitted.

      18.     Denied.

## COUNT I

      19.     AIA realleges and incorporates by reference the answers to Paragraphs 1-

18.

      20.     Admitted.

      21.     Denied.

      22.     Denied.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

**The License Agreement Does Not Apply to Plaintiffs' Conduct In Using Cell Lines To Screen Candidate Drugs**.

      A.     The Amended Complaint fails to state a claim for which relief can be

granted.

      B.     The License Agreement referenced by Plaintiffs is a valid agreement;

however, the scope of the License Agreement does not extend to the use of cell lines as

practiced by Plaintiffs including use of what is commonly known as the "Swedish

Mutation" in the cell lines and is sometimes designated as APP695NL.  Therefore, the

License Agreement does not govern or apply to the present dispute since Plaintiffs'

conduct falls outside the scope of the license grant and the dispute arises outside of the License Agreement.

C.     AIA has properly brought a patent infringement action where the scope of the license granted in Part 3.01 of the License Agreement does not encompass the use of cell lines as practiced by Plaintiffs, and so the License Agreement does not govern because Plaintiffs have acted to commit patent infringement outside the limited scope of license that was granted.

D.     AIA's patent infringement action is not subject to arbitration because the cell lines used by Plaintiffs are not "MINNESOTA TECHNOLOGY" within the meaning of the License Agreement.

E.     AIA's patent infringement action is not subject to arbitration because the cell lines used by Plaintiffs are not transgenic mice developed by Karen Hsiao within the meaning of the License Agreement.

F.     AIA's patent infringement action is not subject to arbitration because the cell lines used by Plaintiffs are not future transgenic rodents developed by Karen Hsiao, Mayo, or Mayo's affiliates and assigns, within the meaning of the License Agreement.

G.     AIA's patent infringement action is not subject to arbitration because the cell lines used by Plaintiffs are not and do not contain gene constructs as used by Karen Hsiao, Mayo FMER, or Mayo FMER's affiliates and assigns to develop the transgenic mice or future transgenic rodents within the meaning of the License Agreement.

H.     The cell lines used by Plaintiffs are not modifications, improvements or enhancements to the materials identified in paragraphs E through G above.

I.      Arbitration cannot be compelled under 9 U.S.C. § 4 because the arbitration

clause of the License Agreement specifically prohibits arbitration of disputes concerning

patent invalidity or infringement and/or because the patent infringement action arises

outside the scope of the License Agreement.  Part 8.03 of the License Agreement merely

provides a right to arbitration of "all disputes between them [the parties] *concerning this*

*Agreement, excluding any dispute relating to patent validity or infringement* [emphasis

added]."

J.      AIA's patent infringement action cannot be stayed under 9 U.S.C. §3

because the License Agreement specifically prohibits arbitration of disputes concerning

patent invalidity or infringement.

### Second Affirmative Defense

**Plaintiffs Are Barred From Compelling Arbitration Because They Have Unclean Hands.**

A.      Plaintiffs are barred from compelling arbitration and staying the patent

infringement action by application of the doctrine of unclean hands on the basis of

Plaintiffs' past conduct, which continues until the present day including a nonpayment of

money that would be due if License Agreement did govern Plaintiffs' conduct.  Plaintiffs'

action to compel arbitration is inconsistent with its own actions as a licensee.

B.      Plaintiffs are barred from compelling arbitration and staying the patent

infringement action by application of the doctrine of unclean hands on the basis of

Plaintiffs' past admissions.  Plaintiff Mayo FMER has admitted that it does not have a

license and admitted this in a written communication dated June 17, 2002 from Susan

Stoddard on behalf of Mayo FMER.

C.     Plaintiffs are barred from compelling arbitration and staying the patent infringement action by application of the doctrine of unclean hands on the basis of their material misrepresentations.  Plaintiffs have negotiated to expand the License Agreement to include cell lines, but did so in bad faith by withholding important information from AIA to hide the nature of their past infringing conduct.  Plaintiffs withheld this material information, and AIA detrimentally relied upon the statements made by Plaintiffs in engaging in these negotiations.

### Third Affirmative Defense

**Plaintiffs Are Barred From Compelling Arbitration Because They Have Waived The Right To Do So.**

A.     Plaintiffs are barred from compelling arbitration and staying the patent infringement action by virtue of waiver on the basis of Plaintiffs' past conduct, which continues until the present day as a nonpayment of money that would be due if License Agreement did govern Plaintiffs' conduct.

B.     Plaintiffs are barred from compelling arbitration and staying the patent infringement action by virtue of waiver on the basis of Plaintiffs' past admissions. Plaintiff Mayo FMER has admitted that it does not have a license and admitted this in a written communication dated June 17, 2002 from Susan Stoddard on behalf of Mayo FMER.

### Fourth Affirmative Defense

**Plaintiffs Are Barred From Compelling Arbitration Because They Are Estopped From Doing So.**

A.     Plaintiffs are barred from compelling arbitration and staying the patent infringement action by virtue of estoppel on the basis of Plaintiffs' past conduct and

admissions.  AIA is entitled to rely, and has relied, upon such statements and conduct and would be harmed by an arbitration proceeding because arbitration does not typically permit sufficient discovery for the conduct of a patent infringement action, as was contemplated in Part 8.03 of the License Agreement exempting patent invalidity and infringement matters from arbitration.

B.      Plaintiffs are barred from compelling arbitration and staying the patent infringement action by virtue of estoppel on the basis of Plaintiffs' past admissions. Plaintiff Mayo FMER has admitted that it does not have a license and admitted this in a written communication dated June 17, 2002 from Susan Stoddard on behalf of Mayo FMER.

C.      Plaintiffs have negotiated to expand the License Agreement to include cell lines, but did so in bad faith by withholding important information from AIA.  Plaintiffs withheld this material information, and AIA detrimentally relied upon the statements made by Plaintiffs in engaging in these negotiations.

## COUNTERCLAIMS

Counter-Plaintiff, Alzheimer's Institute of America, Inc. ("AIA"), files its counterclaim against Counter-Defendants Mayo Clinic Jacksonville, Mayo Foundation for Medical Education and Research, Myriad Genetics, Inc. and Myriad Pharmaceuticals, Inc., and states as follows:

1.      This is an action for patent infringement and breach of a license agreement of certain patented technologies.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction under 28 U.S.C. §§ 1331, 1338 and 1367.

3.      Venue exists under 28 U.S.C. §§ 1391 and 1400.

## PARTIES

4.      AIA reasserts and realleges the allegations of paragraphs 3-6 of its Second
Amended Answer and Affirmative Defenses, as if fully set forth herein.

## COUNT I – PATENT INFRINGEMENT

### (Against Mayo and Myriad)

5.      AIA incorporates by reference its responses to paragraphs 1 -22 as set out
in this Second Amended Answer, as well as the allegations it makes in each of its
affirmative defenses and counterclaims.

6.      This Count I is not subject to arbitration under the License Agreement.

7.      AIA owns United States Patent No. 5,455,169 (the '169 Patent; attached
as Exhibit 1), which discloses and claims a nucleic acid sequence encoding a mutated
form of human amyloid precursor protein or fragment of such protein, as well as a
mammalian cell line incorporating this sequence (the "Swedish Mutation cell lines").

8.      AIA also owns United States Patent No. 5,795,963 (the '963 Patent;
attached as Exhibit 2), which discloses and claims a mutated form of human amyloid
precursor protein.

9.      Mayo Clinic of Jacksonville, acting in privity with and with permission
from Mayo FMER, has performed or directed research that is documented in the attached
Exhibit 3, which reports use of the Swedish Mutation cell lines, namely in the form of H4
human neuroglioma cells overexpressing APP695NL to screen a group of at least about
250 nonsteroidal anti-inflammatory drugs, and the use of CHO cells overexpressing
APP695NL,I-his in performing $\gamma$-secretase assays.

9

10.     These acts by Mayo Clinic of Jacksonville, Inc. were undertaken without permission from AIA and constitute infringement of the '169 and '963 Patents under 35 U.S.C. § 271.

11.     Mayo Clinic of Jacksonville Inc.'s infringing activities have been undertaken in willful disregard of the '169 and '963 Patents.

12.     On information and belief, defendant Mayo FMER sold certain research services performed by Mayo Clinic of Jacksonville and incorporating Swedish Mutation cell lines to Myriad and acted as Myriad's partner in research using Swedish Mutation cell lines.

13.     On information and belief, Myriad has continued to perform or direct research using Swedish Mutation cell lines.  Myriad benefited from the research described in Exhibit 4 (an Internet publication obtained from Myriad's website), collaborated in the research documented in Exhibit 4, induced others to perform the research, and is using results from the research to develop new drugs, such as MPC-7869.

14.     These acts by Myriad were undertaken without permission from AIA and constitute infringement of the '169 and '963 Patents under 35 U.S.C. § 271.

15.     Myriad's infringing activities have been undertaken in willful disregard of the '169 and '953 Patents.

16.     AIA has been and continues to be irreparably harmed by the infringing activities of Mayo and Myriad.

## COUNT II – BREACH OF LICENSE AGREEMENT

### (Wrongful Use of Cell Lines – Against Mayo)

17.     AIA incorporates by reference its responses to paragraphs 1 -22 as set out in this Second Amended Answer, as well as the allegations it makes in each of its affirmative defenses and counterclaims.

18.     Separate and apart from the action for patent infringement Plaintiff, Mayo FMER has breached the License Agreement.  The Parties have concluded an arbitration as ordered by the Court specifically because a "determination whether the agreement licenses Mayo's use in 'cell lines' of the patented technology both logically precedes and legally governs the contingent and prospective issue of patent infringement." (Doc. 40 at 3)

19.     The arbitrator made various findings that the Court has now confirmed. (Doc. 60-2)

20.     The arbitrator found that whether Mayo's or Myriad's activities with respect to either the Swedish mutation cell lines  "containing constructs pAG3-695NL, pAG3-695ΔNLO,A1 and pAG3-695ΔNL,ΔI, H or the gene constructs themselves infringe any patent is <u>not</u> within the scope of this arbitration." (Doc. 60-2 at 11)

21.     The arbitrator was without contractual scope of authority and so also lacked jurisdiction to rule on patent infringement, finding that the "ownership, validity, or infringement of any patent was not before the arbitrator."  (Doc 60-2 at 11.)

22.     The arbitrator had no contractual or jurisdictional authority to consider any issues concerning the ownership, validity or infringement of any patent because the license agreement from AIA to Mayo specifically excludes these issues from arbitration.

23.     By virtue of ownership in the '169 and '953 Patents, AIA has a right to exclude Mayo from using cell lines that contain the Swedish mutation, and the arbitrator's opinion confirms that Mayo's use of such cell lines was <u>not</u> within the scope of AIA's license to Mayo.

24.     Mayo was and is obligated by a duty under the license by AIA, and Mayo mistakenly or knowingly failed to meet that duty by using cell lines that contain the Swedish mutation.

25.     The breach of this duty under license occurred in bad faith, which is shown in a portion of the Arbitrator's opinion addressing Dr. Susan Stoddard's written communications to AIA in 2002 stating on behalf of Mayo that the "current license agreement between AIA and Mayo does not, in our opinion, cover the use of Swedish mutations in cell lines," where the arbitrator found that her later contradictory testimony was "not credible" and Dr. Stoddard had also stated that "her new position reflects Mayo's counsel interpretation of Section 2.04(c)" in  the license agreement.  (Doc. 60-2 at 4).

26.     Dr. Stoddard's written communications in 2002 demonstrate bad faith, even then breaching an implied duty of contract, by misleading AIA to believe that Mayo scientists were developing Swedish mutation cell lines <u>prospectively</u> and that Myriad may have a commercial interest, while omitting disclosure that: (1) even before 2002 Mayo made <u>prior</u> use of Swedish mutation cell lines as confirmed by the disclosure in an application for patent US 6,911,466 that was then soon due to publish confirming Mayo's unauthorized use of Swedish mutation cell lines in 2001, (2) Dr. Stoddard and others at Mayo were at the time of these communications working on contractual arrangements

with Myriad with an intent to further exploit the use of Swedish mutation cell lines, (3)

Dr. Stoddard had personal participation in meetings with Myriad on this project involving

the use of Swedish mutation cell lines since at least December of 2001 only days after

Mayo filed its application for patent US 6,911,496, and (4) Mayo was then actively

engaged in work using Swedish mutation cell lines and was already sharing data from

this research with Myriad.

27.     In the event that this Court finds in favor of AIA's claim for patent

infringement (Count I), then the infringing use of cell lines also constitutes a breach of

the AIA-Mayo License Agreement.

### COUNT III – BREACH OF LICENSE AGREEMENT

### (Promise Not to Challenge - Against Mayo)

28.     AIA incorporates by reference its responses to paragraphs 1-22 as set out

in this Second Amended Answer, as well as the allegations it makes in each of its

affirmative defenses and counterclaims.

29.     Separate and apart from the action for patent infringement, Plaintiff Mayo

FMER has breached the License Agreement.  The Parties have concluded an arbitration

as ordered by the Court specifically because a "determination whether the agreement

licenses Mayo's use in 'cell lines' of the patented technology both logically precedes and

legally governs the contingent and prospective issue of patent infringement." (Doc. 40 at

3)  The issues of validity and infringement of the '169 Patent were not subject to

arbitration.

30.     In the License Agreement, Plaintiff Mayo FMER agreed not to initiate or voluntarily participate in any action directed at undermining, invalidating, or declaring unenforceable any claims of the '169 or '963 Patents.

31.     Pursuant to Counts II and III of Plaintiffs' Answer to Defendant's Amended Counterclaims and Plaintiffs' Counterclaims, Plaintiffs seek a declaration from the Court that the claims of the '169 and '963 Patents are invalid and unenforceable. (Doc. 82 at 10-12)

32.     Plaintiff Mayo FMER's effort to undermine, invalidate, and render unenforceable the '169 and '963 Patents in this action constitutes a material breach of at least section 7.02 of the License Agreement.

**WHEREFORE**, AIA requests:

A.      as for Count One: (a) entry of judgment that Mayo and Myriad willfully infringe the '169 and '953 Patents; (b) an injunction against Mayo and Myriad under 35 U.S.C. § 283, to stop their infringement of the '169 and '953 Patents; (c) an award of damages against Mayo and Myriad adequate to compensate AIA for the infringement of the '169 and '953 Patents, trebled to compensate for the willfulness of the infringement pursuant to 35 U.S.C. § 284; (d) an order pursuant this court's inherent equitable powers that Mayo and Myriad disgorge to AIA any and all ill-gotten gains that they received as result of their willful infringement of the '169 and '953 Patents as a deterrent against such conduct along with an accounting of all such ill-gotten gains; (e) interest thereon; (f) a judgment deeming this to be an exceptional case within the meaning of 35 U.S.C. § 285, entitling AIA to an award of costs, reasonable attorney fees, and expenses incurred in this action; and (g) such other and further relief as the Court may deem just and proper;

B.      as for Count Two: AIA and Mayo having completed arbitration as ordered by the Court, and the Court having confirmed the arbitration opinion of Dr. David R. Marsh (Doc. No. 60) in American Arbitration Association case no. 33 133 00117 07 (Doc. No. 65), (a) an order dismissing Plaintiffs' Amended Complaint in this action, and (b) such other and further relief as the Court may deem just and proper;

C.      as for Count Three: (a) entry of judgment that Mayo materially breached the License Agreement; (b) an award of damages adequate to compensate AIA for the breach; (c) interest thereon; and (d) such other and further relief as the Court may deem just and proper.

## JURY DEMAND

AIA demands trial by jury on all claims so triable.

Respectfully submitted,


By:  s/ William A. Rudy
      William A. Rudy
      David V. Clark
      LATHROP & GAGE LLP
      2345 Grand Boulevard, Suite 2200
      Kansas City, Missouri  64108-2684
      Tel:  (816) 292-2000
      Fax:  (816) 292-2001
      wrudy@lathropgage.com
      dclark@lathropgage.com

      Pedro F. Bajo, Jr., FBN 966029
      Richard H. Martin, FBN 579831
      AKERMAN SENTERFITT
      401 E. Jackson St., Suite 1700
      Tampa, FL 33601-3273
      Tel: (813) 223-7333
      Fax: (813) 223-2837
      pedro.bajo@akerman.com
      richard.martin@akerman.com

      Dan Cleveland, Jr.
      Michael G. Martin
      LATHROP & GAGE LLP
      4845 Pearl E. Circle, Suite 302
      Boulder, CO 80301
      Tel: (720)931-3012
      Fax:720/931-3001
      dcleveland@lathropgage.com
      mmartin@lathropgage.com

      *Attorneys for Defendant/Counter-Plaintiff*
      *Alzheimer's Institute of America, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on July 27, 2009, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send notice of electronic filing to all CM/ECF participants.


s/ William A. Rudy
*Attorneys for Defendant/Counter-Plaintiff Alzheimer's Institute of America, Inc.*